IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DENA R. POTTER,**

    Plaintiff,

v.                                                                                                  Civil Action No. 3:15cv38

**THE ASSOCIATED PRESS
and
KATHLEEN CARROLL,**

    Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant the Associated Press's (the "AP") Motion to Dismiss the matter against it pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 3.) Plaintiff Dena Potter filed a response to the motion, and the AP replied. (ECF Nos. 5, 6.) The matter is ripe for disposition. The Court dispenses with oral argument because the materials before the Court adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[2] For the reasons that follow, the Court GRANTS IN PART and DENIES in PART the AP's Motion to Dismiss.[3]

---

[1] Fed. R. Civ. P. 12(b)(6) allows a party to seek dismissal for "failure to state a claim upon which relief can be granted."

[2] The parties are diverse and the amount in controversy exceeds $ 75,000. *See* 28 U.S.C. § 1332(a)(1).

[3] Defendant Kathleen Carroll has made no appearance in the action, and the record before the Court does not indicate that a summons to Carroll has been returned, either executed or unexecuted.

## I. Standard of Review

### A. Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

2

Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

### B. Attachment of Additional Exhibits

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

The AP attached five exhibits to its Memorandum in Support of the Motion to Dismiss, via the Declaration of Mr. Jay Ward Brown, Esq.: (1) a copy of the indictment in *United States v. Caramadre*, No. 1:11-cr-00186-S-PAS (D.R.I. Nov. 17, 2011) (the "Caramadre Indictment") (AP Mem. Supp. Mot. Dismiss, Ex. 1 ("Caramadre Indictment"), ECF No. 4-2); (2) an October 9, 2013 APNewsAlert entitled "Court records: McAuliffe lied to postal inspector

3

investigating RI death benefits scam" (*Id.* Ex. 2, ECF No. 4-3); (3) a copy of a report regarding then-gubernatorial candidate Terry McAuliffe as published online by USA Today and updated to reflect the story's retraction (*Id.* Ex. 3, ECF No. 4-3); (4) a copy of the "kill notice" sent to AP member news organizations retracting the above report (*Id.* Ex. 4, ECF No. 4-3); and, (5) a copy of a draft statement made by Defendant Carroll during a conference call with AP employees on October 24, 2013 (the "Conference Call") (*Id.* Ex. 5, ECF No. 4-3.) The Court will consider the Caramadre Indictment, the APNewsAlert, and the "kill notice" because neither party contests their authenticity and the Complaint refers to all three documents in a manner that makes them central to the claims.[4] *See Witthohn*, 164 F. App'x at 396–97 (citations omitted).

Two documents, however, cannot be reviewed at this stage of the litigation. The Court will not consider Brown Declaration Exhibit 3, the copy of the report purportedly published online, or Brown Declaration Exhibit 5, the copy of the draft statement made by Carroll during the Conference Call. As to Exhibit 3, the Complaint refers to a report that would be central to the facts of Potter's claims. However, Potter appropriately argues that the report attached to the AP's Memorandum in Support introduces additional extrinsic factual information regarding whether USA Today published the inaccurate report. As to Exhibit 5, while the Complaint refers to Carroll's statements made during the Conference Call, and these statements will prove central to Potter's claims, Potter properly challenges the use of Carroll's draft statements for purposes of the Motion to Dismiss. Potter avers that the "draft statement . . . may or may not have been the actual words spoken" by Carroll. (Potter Mem. Opp'n 7.)

---

[4] *See* Potter Mem. Opp. Mot. Dismiss ("Potter Mem. Opp'n") 6–7, ECF No. 5.

At this juncture, the Court may take as true only the facts asserted in Potter's Complaint. As such, Potter suitably challenges the use of Brown Declaration Exhibits 3 and 5 during a motion to dismiss stage. Absent further evidence regarding authenticity, the Court will not consider the online report or Carroll's draft statement in its consideration of the AP's Motion to Dismiss.

## II. Factual and Procedural Background

### A. Summary of Allegations in Potter's Complaint[5]

From January 2005 until her termination on October 21, 2013, the AP employed Potter in various positions. In July 2011, Potter became the "Interim News Editor for the states of Virginia and West Virginia," and in March 2012, the AP promoted her to News Editor for the same states. (Compl. ¶¶ 11–12.) During the times pertinent to the Complaint, Defendant Kathleen Carroll served as a Senior Vice President and Executive Editor of the AP. The subject of this suit involves statements purportedly about Potter and two other AP employees by Carroll regarding the AP's coverage of the 2013 Virginia gubernatorial contest between Democrat Terry McAuliffe and Republican Kenneth Cuccinelli.

At approximately 3:00 p.m. on October 9, 2013, Potter began working on a news story involving a shooting at a federal courthouse in West Virginia. Around 4:00 p.m. that day, Robert Lewis, an AP journalist, contacted Potter and told her about a developing story regarding a fraudulent death benefits scheme in Rhode Island. Although the Complaint does not identify his source, Lewis "had learned that McAuliffe was expressly and accurately identified in the [Rhode Island] federal court papers as an investor" in the scheme. (Compl. ¶ 16.) The court papers

---

[5] For purposes of the Motion, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Potter. *Matkari*, 7 F.3d at 1134.

included the Caramadre Indictment. The AP would later learn that McAuliffe was merely a passive investor in the scheme.

Potter felt she could not work on both the West Virginia courthouse shooting story and the McAuliffe story, and she informed Lewis that she would arrange for him to work on the McAuliffe story with an editor from the South Desk[6] in Atlanta instead of her. The South Desk, through Supervisor Carol Druga, assigned Lewis to work with Norm Gomlak, an Atlanta editor. Both Gomlak and Potter reported to Lisa Marie Pane, the South Regional News Editor.

At approximately 9:00 p.m., someone from the office of candidate Cuccinelli contacted Lewis and pointed him to particular pages of the Caramadre Indictment. These pages referred to the involvement of a "T.M." in the death benefits scheme. The indictment alleged that T.M. lied to investigators regarding the scheme. Because of Lewis's earlier investigation, he believed this T.M. was then-candidate McAuliffe, although this would later prove to be an incorrect assumption. Shortly thereafter, Lewis informed Gomlak of his new understanding of McAuliffe's involvement in the scheme, and Lewis and Gomlak decided to include this in an "APNewsNow" story going out "on the wire."[7]

At 9:34 p.m., Potter contacted Lewis for an update on the McAuliffe story. Lewis informed Potter that the story had "blown up" and that the court documents showed that McAuliffe had lied to federal investigators. (Compl. ¶ 31.) Potter assumed the story was already on the wire, but Lewis told her that Gomlak had not yet put the story out. At approximately

---

[6] The South Desk: (1) reads and edits all stories from the "13 states in the [AP's] South Region, including Virginia and West Virginia;" (2) handles discussions with authors; (3) renders "final approval for the stories to go out 'on the wire;'" and, (4) puts the stories "on the wire." (Compl. ¶ 19.)

[7] Potter frequently uses the phrase "on the wire," but fails to define the meaning of the term. Context suggests that "on the wire" means to make the story available to news outlets.

9:40 p.m., Potter called Gomlak, who informed her that he was ready to put the story on the wire. Based on their conversation, Potter believed Gomlak was "on top" of the story. At 9:45 p.m., Potter put out a News Alert to give "notice of an imminent 'big story'" regarding McAuliffe and the Rhode Island federal indictment. (Compl. ¶¶ 33, 38–39.) Gomlak then put the article on the wire.

In the meantime, apparently unbeknownst to Potter or Gomlak, at 9:14 p.m., Lewis had emailed the McAuliffe campaign office seeking a statement regarding McAuliffe's involvement in the scheme. At 9:41 p.m., McAuliffe's office informed Lewis that a statement would be forthcoming in fifteen minutes. At 10:00 p.m., after Potter had issued the News Alert and Gomlak had put the story on the wire, McAuliffe's office contacted Lewis and expressly denied that McAuliffe was the T.M. referenced in the Caramadre Indictment.

At 10:05 p.m., Lewis relayed McAuliffe's statement to Potter, asking her to "hold on." (Compl. ¶ 41.) After questioning Lewis on the phone regarding the story, Potter read the Caramadre Indictment for the first time. At 10:12 p.m., she informed Gomlak about the denial from the McAuliffe office. At 10:25 p.m., Potter, Lewis, and Gomlak participated in a conference call during which Lewis and Gomlak provided Potter with the details of their investigation of the story. The three decided to call Pane, and at 10:42 p.m., during that call, Pane directed Gomlak to "kill" the story. Around 11:23 p.m., after some confusion as to the "kill" process, Gomlak "killed" the story and placed a corrected version on the wire. At 12:15 a.m., Lewis filed a final corrected story.

On October 16, 2013, the AP suspended Potter, and on October 21, the AP terminated Potter "without prior notice or good cause." (Compl. ¶ 57.) On October 24, 2013, the AP held the Conference Call with AP employees of the South Desk, including those within Virginia and

7

West Virginia. During that call, Carroll made statements regarding the McAuliffe incident. On November 12, 2013, Carroll made additional statements regarding the McAuliffe event at a "Town Hall meeting of AP employees" held by the AP (the "Town Hall Meeting"). (Compl. ¶ 60.) Potter alleges that beginning on October 10, 2013,[8] and specifically during the Conference Call and the Town Hall Meeting,[9] Carroll made defamatory statements about Potter regarding Carroll's decision to fire Potter. The statements Potter alleges to be defamatory are:

1. "[S]tatements to the effect that Potter had made a 'grievous mistake' from which 'there was no recovery." [hereinafter "Statement 1"]. (Compl. ¶ 53.)

2. "[S]tatements to the effect that Potter had 'failed the [AP's] own standards." [hereinafter "Statement 2"]. (Compl. ¶ 54.)

---

[8] The AP suggests that statements made any time before October 14, 2013 would run afoul of Virginia's statute of limitations. Under Virginia law, "[e]very action for injury resulting from libel, slander, insulting words or defamation shall be brought within one year after the cause of action accrues." Va. Code Ann. § 8.01-247.1 (West 2015). Potter filed her state action on October 14, 2014. Therefore, "any defamatory act giving rise to this claim of defamation [per se] must have occurred on, or subsequent to," October 14, 2013. *Washington v. Veritiss, LLC*, No. 1:14cv1250, 2015 WL 965931, at *3 (E.D. Va. Mar. 4, 2015).

Potter rejects this contention in part. The Court first notes that Potter's citation to Federal Rule of Civil Procedure 15(c)(1)(B) in her memorandum in opposition to the AP's Motion provides no assistance in this analysis. This provision refers to the relation back of amendments to pleadings and Potter has not amended her Complaint in this action.

More fittingly, Potter appears to concede that, accounting for a Columbus Day holiday, any statement made prior to October 11, 2013 might be time barred. Still, as the Court will discuss, Potter appears to rest her claims of defamation on statements made during the October 24 Conference Call, the November 12 Town Hall Meeting, or both. (*See* Part III.C, *infra*.) Because the Court cannot discern an earlier date of allegedly defamatory conduct, the Court sees no limitations issue before it.

[9] Potter includes "Carroll's verbatim statements" made at the Town Hall Meeting in her Complaint. (Compl. ¶ 60.) No portions of the Town Hall statements align exactly with the allegedly defamatory statements, but some critical portions seem similar. (*See* Part III.C, *infra*.)

8

    3.    "[S]tatements that there were 'no employees involved in something like' what Potter was involved with on October 9, 2013, 'who did not leave the company.'" [hereinafter "Statement 3"]. (Compl. ¶ 55.)

    4.    "[S]tatements that the standard [Carroll] applied to fire Potter 'does not mark a change in our standards.'" [hereinafter "Statement 4"]. (Compl. ¶ 56.)

Potter alleges that Carroll made each statement "maliciously." (Compl. ¶¶ 53–56.) Potter claims that Carroll made such statements because Carroll personally caused the AP to suspend and fire Potter, and she thus "was highly motivated to make and continue to make false statements of fact . . . to justify her unjustifiable decision to fire Potter." (Compl. ¶ 58.)

### B. Procedural History

On October 14, 2014, Potter filed her Complaint in the Circuit Court for the City of Richmond, Virginia. (ECF No. 1-1.) She alleges one count of defamation per se against Carroll and the AP. Potter seeks compensatory and punitive damages and costs. On January 21, 2015, the AP removed this action to this Court. (ECF No. 1.) Defendant Kathleen Carroll has made no appearance in the action, and the record before the Court does not reflect whether or not a summons has been served on Carroll.

The AP filed its Motion to Dismiss, arguing that each of the four allegedly defamatory statements are nonactionable opinion; that Potter has conceded Statements 1 and 2; and, that Statements 3 and 4 do not concern Potter. (ECF No. 3.) The AP also seeks to dismiss Potter's claim for punitive damages. Potter filed a response in opposition to the motion, and the AP filed a reply. (ECF Nos. 5, 6.) Accordingly, this matter is ripe for disposition.

### III. Analysis

For the reasons stated below, Potter has sufficiently pled facts that, taken as true at the motion to dismiss stage, plausibly allege that Carroll made actionable defamatory statements. However, she has not alleged that Carroll made such statements with actual malice supporting a

9

claim for punitive damages. Accordingly, the Court grants in part and denies in part the AP's Motion to Dismiss.

### A. <u>Standard to Plead Defamation Per Se</u>

Potter alleges one count against the AP: defamation per se. In order to state a claim for defamation pursuant to Virginia law,[10] a plaintiff must allege (1) the publication[11] (2) of an actionable statement with (3) the requisite intent. *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). A statement is defamatory per se if, among other circumstances not pertinent here, it "imputes an unfitness to perform the duties of a job or a lack of integrity in the performance of the duties" or "prejudices the party in [his or] her profession or trade." *Yeagle v. Collegiate Times*, 497 S.E.2d 136, 138 n.2 (Va. 1998) (citing *Fleming v. Moore*, 275 S.E.2d 632, 635 (Va. 1981)); *see Besen v. Parents and Friends of Ex-Gays, Inc.*, No. 3:12cv204, 2012 WL 1440183, at *3 (E.D. Va. Apr. 25, 2012) (citing *Tronfeld v. Nationwide Mut. Ins. Co.*, 636 S.E.2d 447, 450 (Va. 2006)). In order to recover punitive damages on a claim of defamation or defamation per se, a plaintiff must allege and prove actual malice. *Spencer v. Am. Int'l Group, Inc.*, No. 3:08cv591, 2009 WL 47111, at *4 (E.D. Va. Jan. 6, 2009) (citing *Jordan*, 612 S.E.2d at 207). Actual malice means that the defendant made the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)).

---

[10] The parties correctly agree that the Court applies Virginia defamation law in this diversity action. A court exercising diversity jurisdiction applies the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).

[11] The AP does not dispute the publication of Carroll's allegedly defamatory statements or that the statements could be defamatory per se. Accordingly, the Court will address only whether Potter has sufficiently pled that Carroll's statements are actionable as defamation, and whether Carroll delivered her statements with actual malice.

### B. Standard to Assert Actionable Defamatory Statements

The AP contends that Carroll's statements are not actionable. An actionable statement "asserts a provably false fact or factual connotation." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990)). "If the statements at issue are either not defamatory, objectively true, or protected expressions of opinion," no actionable defamation exists. *Cook, Heyward, Lee, Hopper, & Feehan v. Trump Va. Acquisitions LLC*, No. 3:12cv131, 2012 WL 1898616, at *3 (E.D. Va. May 23, 2013) (citing *Am. Commc'ns Network v. Williams*, 568 S.E.2d 683, 686 (Va. 2002)). "[T]o be defamatory, a statement must be more than unpleasant or offensive . . . ." *Hockycko v. Entrodyne Corp.*, No. 6:05cv25, 2005 WL 3132320, at *6 (W.D. Va. Nov. 22, 2005). "Defamatory words 'make the plaintiff appear odious, infamous, or ridiculous.'" *Cutaia v. Radius Eng'g Int'l, Inc.*, No. 5:11cv77, 2012 WL 525471, at *3 (W.D. Va. Feb. 16, 2012) (quoting *Chapin*, 993 F.2d at 1092).

"Pure expressions of opinion, not amounting to 'fighting words,' cannot form the basis of an action for defamation." *Chaves v. Johnson*, 335 S.E.2d 97, 101 (Va. 1985). Such statements include "speech which does not contain a provably false factual connotation, or . . . which cannot reasonably be interpreted as stating actual facts about a person." *Besen*, 2012 WL 1440183, at *3 (alteration in original) (quoting *Yeagle*, 497 S.E.2d at 137). The Court determines as a matter of law whether a statement "is one of fact or one of opinion." *Chaves*, 335 S.E.2d at 102.

Although the Supreme Court of the United States has not provided a categorical protection for statements of opinion, a statement merits protection if it "cannot 'reasonably [be] interpreted as stating actual facts.'" *Milkovich*, 497 U.S. at 20 (alteration in original) (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988)); *see Snyder v. Phelps*, 580 F.3d 206,

218–19 (4th Cir. 2009), *aff'd*, 562 U.S. 443 (2011). To determine whether a statement posits facts, the Court must look to the actual language used, as well as the context and general tenor of the statement, "to determine if it could be interpreted as asserting a fact." *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998) (citing *Milkovich*, 497 U.S. at 21). The United States Court of Appeals for the Fourth Circuit makes clear that the court *must* consider the context of an allegedly defamatory statement in the analysis of whether the statement constitutes opinion. *Snyder*, 580 F.3d at 219–20 (focusing on the "plain language of the statement and the context and general tenor of its message"); *Biospherics*, 151 F.3d at 184 (examining the "context and tenor of the [allegedly defamatory] article"). The Supreme Court of Virginia similarly requires an examination of context. *Hyland v. Raytheon Tech. Servs. Co.*, 670 S.E.2d 746, 751 (Va. 2009) ("In determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement. . . . Rather, a court must consider the statement as a whole.")

### C. Potter Asserts Facts Sufficient to Plead Actionable Defamatory Statements

Potter alleges that Carroll made four defamatory statements at some point beginning on October 10, 2013. She seems to allege that Carroll primarily made such statements in the Conference Call, Town Hall Meeting, or both. Potter includes the statements made by Carroll at the Town Hall Meeting, but does not include the statements made by Carroll during the Conference Call. As discussed above, the Court will not consider the draft Conference Call statements submitted by the AP because Potter disputes the authenticity of the draft statements. *See Witthohn*, 164 F. App'x at 396–97 (citations omitted).

The Town Hall Meeting excerpt contained in Potter's Complaint appears to include: (a) some version of Statement 1 ("But all mistakes are not equal. Some are too grievous and

there is no recovery from them, and that was the case here." (Compl. 14)); (b) some adaptation of Statement 2 (discussing "a recent and extremely serious violation of [the AP's] standards" (Compl. 13)); and, (c) two forms of Statement 4 ("These are the same standards we've always upheld." (Compl. 14) and ("[T]hese are not new standards; these are simply upholding the ones that have always been part of the AP." (Compl. 15)). No iteration of Statement 3 seems to appear in the Town Hall Meeting excerpt in Potter's Complaint. In order to make a proper determination of the actionable nature of Carroll's alleged statements, the Court must be able to consider the "context and general tenor" of the statements as a whole. *Snyder*, 580 F.3d at 219–20.

The benefit of context would afford the Court the opportunity to more fully consider the record in conjunction with persuasive authority. Carroll's Statements 2, 3, and 4, discussing the AP standards and the treatment of other similarly situated employees, might refer to objectively provable factual standards such as those in *Harrell v. Colonial Holdings, Inc.*, in which the court held that statements that Defendants "failed to pay vendors" and that they "engaged in illegal or unlawful activity" were "objectively provable" and thus actionable. 923 F. Supp. 2d 813, 824 (E.D. Va. 2013) (denying motion to dismiss defamation counterclaim when purchasers of trademark for Strawberry Hill Races claimed defendants held 2012 race in violation of agreement).

Alternately, Statements 2, 3, and 4 may be in reference to standards subjectively held by Carroll, such as those in *Hockycko v. Entrodyne Corp.*, in which the court held that the defendant's statement that "Plaintiff failed to meet any reasonable measure of satisfactory performance" was an opinion and therefore not actionable. 2005 WL 3132320, at *6 (granting motion to dismiss as to some statements about job performance while noting that "[s]tatements

13

of unsatisfactory job performance generally do not rise to the level of defamation" (citations omitted)); *see also Whiting v. Allstate Ins. Co.*, No. 08-12991, 2010 WL 956030, at *9 (E.D. Mich. Mar. 15, 2010) ("When taken in full context, the statements [that plaintiff violated the Allstate Code of Ethics] are expressions of opinion . . ." because the opinion that Whiting violated the code of ethics stemmed from fully disclosed and undisputed facts that he improperly instructed another to delay payment of a claim.), *aff'd*, 433 F. App'x 395 (6th Cir. 2011).

Of the four allegedly defamatory statements, Carroll's Statement 1, that Potter had made a "grievous mistake" from which "there was no recovery," stands as the closest to a pure expression of opinion. A review of case law reveals that Statement 1 is likely nonactionable opinion. *See, e.g., Jenkins v. Snyder*, No. 00cv2150, 2001 WL 755818, at *4–5 (E.D. Va. Feb. 6, 2001) (granting motion to dismiss defamation claim based on a football team-owner's statements to a publication that plaintiff groundskeepers were "trying to kill someone with their crappy fields" because they were subjective, unverifiable opinion and, given their hyperbolic nature, were non-actionable as opinion); *Marroquin v. Exxon Mobile Corp.*, No. 08-391, 2009 WL 1529455, at *9 (E.D. Va. May 27, 2009) (holding that the "characterization of Plaintiff's conduct as 'very bad' . . . 'inappropriate' or . . . 'improper' . . . are expressions of opinion that rest on each speaker's perspective" when said about terminated employee). However, without the benefit of a more complete context of the statement, which the Court must consider in its

14

analysis of whether the statement was opinion, the Court hesitates to disregard even this statement.[12]

The Court cannot consider the statements in isolation. *Hyland*, 670 S.E.2d at 751. The parties have presented to the Court only an excerpt of the Town Hall Meeting statement, and this does not include all four allegedly defamatory statements. Accordingly, at this early stage of the litigation, the Court finds that Potter has alleged facts which, considered in the light most favorable to Potter, plausibly allege statements actionable as defamation.

### D. Potter Does Not Sufficiently Allege Actual Malice

The AP separately moves to dismiss any claim for punitive damages. Potter fails to adequately plead facts that Carroll made her allegedly defamatory statements with actual malice, and the Court must dismiss her cursory claim for punitive damages.

---

[12] The AP raises additional arguments in its Motion that fail for the same reason its opinion argument fails at this time. The AP claims that Potter concedes the truth of Statements 1 and 2. (AP Mem. Supp. Mot. Dismiss 20–23, ECF No. 4.) A plaintiff has no claim for defamation for statements that he or she concedes as true. *See Am. Commc'ns Network*, 568 S.E.2d at 686.

Potter does concede that the report was inaccurate. But Potter's Complaint also opposes the notion that, unlike Statement 1's declaration, she personally made any mistake (*see* Compl. ¶ 53), and the idea that, contrary to Statement 2, she failed any of the AP's standards (*see* Compl. ¶¶ 36, 54). Carroll's full statements and their context must be considered in the Court's analysis of their truth or falsity. *See Hyland*, 670 S.E.2d at 751 ("The requirement that an allegedly defamatory statement be considered as a whole also is vital to a determination of the truth or falsity of a defamation claim, because defamatory statements may be made by implication, inference, or insinuation.") Accordingly, at this early procedural stage and without the benefit of context, the Court finds that Potter has not conceded the truth of Statements 1 or 2.

The AP also claims that Statements 3 and 4 are not "of or concerning" Potter. (AP Mem. Supp. Mot. Dismiss 23–25.) An allegedly defamatory statement must be "of or concerning" the plaintiff in order to be actionable. *Spencer*, 2009 WL 47111, at *7 (citing *WJLA-TV v. Levin*, 564 S.E.2d 383, 390 (Va. 2002)).

Statements 3 and 4 certainly refer to treatment of employees other than Potter. Still, the Court must examine the context of the statement to determine this issue. *See Key v. Robertson*, 626 F. Supp. 2d 566, 581–82 (E.D. Va. 2009) (examining an entire press release as to whether it was "of or concerning" plaintiff, not just the single sentence alleged to be defamatory). The Court has not yet been afforded the opportunity to examine all of Carroll's statements in their entirety.

15

A plaintiff must show "actual malice"[13] when he or she is a public official or public figure;[14] when the plaintiff is a private individual alleging he or she was "defamed on matters of public interest,"[15] or when any plaintiff seeks to recover punitive damages. *Milkovich*, 497 U.S. at 14–16 (citing *N.Y. Times*, 376 U.S. 254 and its progeny); *CACI Premier Tech.*, 536 F.3d at 293; *Spencer*, 2009 WL 47111, at *4; *Jordan*, 612 S.E.2d at 207. Actual malice requires a showing by clear and convincing evidence that the allegedly defamatory statement "was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974) (private figure analysis); *Besen*, 2012 WL 1440183, at *5 (limited-purpose public figure analysis); *see Jordan*, 612 S.E.2d at 207 (public figure analysis). While actual malice may be alleged "generally," the Fourth Circuit does not permit "conclusory allegation[s]" of malicious intent to survive on a motion to dismiss. *Mayfield*, 674 F.3d at 377–78 (public figure analysis); *see also Besen*, 2012 WL 1440183, at *6 (citing cases) (limited-purpose public figure analysis).

Potter alleges that Carroll made each allegedly defamatory statement "maliciously." (Compl. ¶¶ 53–56.) Potter claims that Carroll made such statements because she personally caused the AP to suspend and fire Potter, and thus "was highly motivated to make and continue

---

[13] Cases inconsistently refer to this standard as "*New York Times* malice," *Milkovich*, 497 U.S. at 15, "actual malice," *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008) (citing *N.Y. Times*, 376 U.S. at 279–80), or simply "malice," *Mayfield*, 674 F.3d at 377. The Court will employ the "actual malice" phrase articulated in *N.Y. Times*, 376 U.S. at 279–80.

[14] Neither party addresses Carroll's status as a public or private figure and, in the absence of plausible pleading otherwise, the Court considers her a private figure.

[15] The AP initially argues that Potter's "claim involves a matter of legitimate public concern." (AP Mem. Supp. Mot. Dismiss 26–27.) Later, the AP changes its rhetoric, noting that this action essentially concerns an "employment dispute." (AP Reply Supp. Mot. Dismiss 3, ECF No. 6.) The Court makes no finding at this stage regarding whether this action involves a matter of public concern.

to make false statements of fact . . . to justify her unjustifiable decision to fire Potter." (Compl. ¶ 58.) Finally, Potter states that Carroll made her statements "willfully, wantonly, and maliciously . . . , knowing of the falsity of the statements or acting in reckless disregard for the truth or falsity of the statements." (Compl. ¶ 59.)

Recitations of the definition of actual malice, or claims that Carroll knowingly lied or made her statements "maliciously," merely provide "conclusory allegation[s]" that cannot survive a motion to dismiss. *Mayfield*, 674 F.3d at 378. Further, allegations regarding Carroll's motivation to make defamatory statements do "not suggest that [Carroll] knew [her] statements were false or that [she was] reckless with respect to their veracity." *Id.* This is especially true when Potter concedes the information placed on the wire was inaccurate. Potter's bare allegation that Carroll uttered a knowing lie constitutes a "mere recitation of the legal standard" for actual malice. *Id.* Potter makes no claim at all regarding Carroll's knowledge of the alleged falsity of her statements. "Such bald contentions do not pass [Rule] 12(b)(6) muster." *Besen*, 2012 WL 1440183, at *6. Accordingly, the Court grants the AP's Motion to Dismiss as to Potter's claim for punitive damages.

17

## IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part the Motion to Dismiss. (ECF No. 3.) The Court denies the AP's Motion to Dismiss Potter's claim for defamation per se. The Court dismisses Potter's claim for punitive damages.

An appropriate Order shall issue.

/s/<br>
M. Hannah Lauck<br>
United States District Judge

Date: July 15, 2015
Richmond, Virginia